UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CARDIOVASCULAR SYSTEMS, INC., a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>JASON MONEY,<br><br>Defendant. | Case No. 12-CV-2673 (PJS/FLN)<br><br>ORDER |

Courtland C. Merrill, ANTHONY OSTLUND BAER & LOUWAGIE P.A., for plaintiff.

Mark V. Steffenson, HENNINGSON & SNOXELL, LTD., for defendant.

Plaintiff Cardiovascular Systems, Inc. ("CSI") brings this action for breach of contract against a former employee, Jason Money, alleging that Money violated a non-solicitation provision in his employment agreement. This matter is before the Court on Money's motion for summary judgment. The motion is granted for the reasons explained below.

I. BACKGROUND

CSI is a Minnesota corporation that designs, manufactures, and sells orbital atherectomy products. In 2008, CSI employed Money as a district sales manager under a written employment agreement. Money Dep. 8-10. In 2010, Money signed an amendment to his employment agreement that included the following non-solicitation clause:

> Employee agrees that at all times while employed by Cardiovascular Systems, Inc. [and] for one (1) year thereafter, Employee will not solicit, cause to be solicited, or participate in or promote the solicitation of any person to terminate that person's employment with Cardiovascular Systems, Inc. or to breach that person's employment agreement with Cardiovascular Systems, Inc.

Steffenson Aff. Ex. F ¶ 13.2.

Money's employment with CSI ended in December 2011. Money Dep. 25. In February 2012, Money became an independent sales representative for Natural Molecular Testing Corporation ("Natural Molecular"), a provider of genetic-testing kits. Money Dep. 52. Natural Molecular is not a competitor of CSI. Flaherty Dep. 34; Gilbert Dep. 28.

CSI alleges that, after Money left CSI, Money solicited two CSI employees to sell Natural Molecular testing kits (while remaining employed by CSI). Neither of the employees agreed to sell the kits. But, CSI argues, if either of the employees *had* agreed to sell the kits, they would have violated ¶ 7 of CSI's standard employment agreement and ¶ 3.5 of CSI's Code of Ethics and Business Conduct ("Code of Ethics"). Therefore, CSI contends, Money violated the non-solicitation clause in his contract by soliciting these two CSI employees to breach their own employment agreements with CSI.

Money moves for summary judgment on CSI's claim. Money contends that, even if he did solicit CSI employees to sell genetic-testing kits (which he denies), such solicitation did not breach the non-solicitation clause in his contract because neither ¶ 7 of CSI's standard employment agreement nor ¶ 3.5 of CSI's Code of Ethics prohibit CSI employees from selling non-CSI products to CSI customers.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255.

*B. CSI's Breach-of-Contract Claim*

Restrictive covenants — such as the non-solicitation provision and the restrictions on CSI employees' outside activities — are "strictly construed" in Minnesota and "should not be extended beyond their true intent." *Snyder's Drug Stores, Inc. v. Sheehy Props., Inc.*, 266 N.W.2d 882, 885 (Minn. 1978) (per curiam). Any ambiguity in a restrictive covenant or any other contractual provision must be construed against the drafting party "'in the absence of a clear showing that a contrary meaning was intended by the parties at the time of its execution.'" *Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 295 (Minn. Ct. App. 1995) (quoting *Wick v. Murphy*, 54 N.W.2d 805, 809 (Minn. 1952)).

As explained above, the question of whether Money violated the non-solicitation clause in his contract turns on whether an employee of CSI is altogether prohibited from selling non-CSI products to CSI customers by either ¶ 7 of CSI's standard employment agreement or ¶ 3.5 of CSI's Code of Ethics. Paragraph 7 of CSI's standard employment agreement provides in relevant part:

> <u>Best Efforts/Undertakings of Employee.</u> During Employee's employment with the Corporation, Employee shall serve the Corporation faithfully and to the best of his/her ability and shall devote his/her full business and professional time, energy, and diligence to the performance of the duties assigned to him/her. . . . During Employee's employment with the Corporation, Employee shall not engage in any other business activity that would conflict or interfere with his/her ability to perform his/her duties under this Agreement (to include not providing any services to any individual,

> company or other business entity that is a competitor, supplier, or customer of the Corporation, except in connection with Employee's employment with the Corporation). Furthermore, Employee agrees to be subject to the Corporation's control, rules, regulations, policies and programs.

Steffenson Aff. Exs. G, H ¶ 7. Paragraph ¶ 3.5 of CSI's Code of Ethics provides in relevant part that "[e]ach Representative must avoid any situation in which his or her personal interests conflict with or interfere with CSI's interests." Steffenson Aff. Ex. I ¶ 3.5. The Code of Ethics also provides, however, that "CSI Representatives are generally free to engage in outside activities of their choice." *Id.*

CSI contends that these provisions unambiguously prohibit CSI employees from selling non-CSI products to CSI customers at any time. The Court disagrees. These provisions are, at best, ambiguous.

CSI's standard employment agreement requires employees to devote their "business and professional time" — not their personal time— to CSI. The Code of Ethics clarifies that salespeople are "generally free to engage in outside activities of their choice." Together, these provisions clearly communicate that employees of CSI are free to engage in outside activities on their own time — including money-making activities, such as selling non-CSI products — so long as those activities do not create any conflict with CSI's interests. Even CSI's chief administrative officer focused on the distinction between business and personal time, testifying that the standard employment agreement "doesn't prohibit [CSI employees] from engaging in other activities but it does require that the employees dedicate their full efforts to CSI *during the normal course of business*." Flaherty Dep. 25 (emphasis added). Given this emphasis on the *timing* — rather than the *nature* — of the employee's outside activities, a CSI employee could

reasonably conclude that she is permitted to sell products to CSI customers on her own time as long as the products do not compete with CSI products.

CSI nevertheless contends that *all* sales of products to CSI customers are prohibited — even sales made during non-business hours — by virtue of ¶ 7's ban on "providing any services to any . . . customer of the Corporation . . . ." But "providing . . . *services*" to a customer does not obviously include selling a *product* to that customer. The business and legal worlds commonly distinguish between selling products and providing services; indeed, entire bodies of law (such as Article 2 of the Uniform Commercial Code) are grounded on that distinction. A CSI employee could reasonably interpret ¶ 7 to prohibit working for a CSI customer, but not to prohibit selling products to a CSI customer.

This is particularly true given that this language is directed at salespeople, whose main concern about any policy regarding outside activities is going to be to what extent the policy prohibits them from *selling* on their own time. It would have been extremely easy for CSI to adopt a policy that provided that CSI employees may never sell or offer to sell non-CSI products to CSI customers, period. But CSI did not adopt such a policy; instead, its provisions on outside activities focus on the timing of those activities and speak only in broad terms about avoiding conflicts with CSI's interests. A CSI employee could reasonably have believed that selling a non-CSI product to a CSI customer on her own time did not create any conflict with CSI's interests, and therefore did not violate anything in CSI's standard employment agreement or Code of Ethics.

Indeed, even as late as August 2012 — many months after Money left CSI, months after he allegedly solicited CSI employees to sell Natural Molecular products to CSI customers, and

just a few weeks before CSI commenced this action — CSI *still* led its salespeople to believe that they could sell non-CSI products to CSI customers on their own time. In an August 2012 email, Lou Gilbert, CSI's director of human resources, responded to "several inquiries regarding CSI sales employees having outside business ventures that interfere with your obligation to CSI, for example selling non-CSI products to hospitals and doctors during their normal business day with CSI." Merrill Decl. Ex. F. If CSI in fact prohibited *all* sales of non-CSI products to CSI customers, then it would be hard to imagine a better time for Gilbert to make that fact clear to the CSI sales force. Gilbert, however, said no such thing. Instead, Gilbert again focused on the timing of employees' activity, warning that "CSI considers the sale of any non-CSI product to hospitals and doctors *during the normal business day* to be a violation" of CSI's Code of Ethics. This statement would have led a reasonable employee to believe that sales *outside the normal business day* were *not* prohibited.

Later in the email, Gilbert did say that employees' outside activities should not "involve [CSI's] customers . . . ." *Id.* But after reading the email in its entirety, a reasonable salesperson could be confused about CSI's policies. Again, it would have been very easy for Gilbert to simply say that all sales of non-CSI products to CSI customers were prohibited, regardless of when they occurred. But Gilbert did not do so; to the contrary, Gilbert said only that sales of non-CSI products to CSI customers "during the normal business day" were prohibit. If all sales of non-CSI products to CSI customers were prohibited, it would make no sense for Gilbert to refer only to sales that occurred during normal business hours.

In sum, neither ¶ 7 of CSI's standard employment agreement nor ¶ 3.5 of its Code of Ethics clearly prohibit CSI employees from selling non-CSI products to CSI customers outside of

normal business hours. Therefore, even if Money did solicit two CSI employees to sell Natural Molecular test kits to CSI customers, he did not solicit either of those employees to "breach that person's employment agreement with Cardiovascular Systems, Inc.," Steffenson Aff. Ex. F ¶ 13.2, and therefore he did not breach the non-solicitation provision in his own employment agreement.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 25] is GRANTED.

2. Plaintiff's complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 27, 2013          s/Patrick J. Schiltz
                                                                  Patrick J. Schiltz
                                                                   United States District Judge